By the Court: It is so ordered.

All the Justices concurring.

---

ED. H. MANLOVE *et al.* v. THE COMMERCIAL MUTUAL FIRE INSURANCE COMPANY.

1. INSURANCE COMPANY—*Forfeiture of Charter.* The repeal of a statute under which an insurance company is organized, by a subsequent act of the legislature, which declares the charter of such insurance company forfeited unless the company complies with the provisions of the repealing act within a limited time, does not work the cancellation of policies of said company outstanding at the time of the passage of the later act, though the company failed to comply with its provisions and thus forfeited its charter.

2. POLICY—*Cancellation.* The acts of the insurance company, in deciding to close up its business, and notifying the plaintiffs that the

company would not be liable on its policies issued to them, without returning to the plaintiffs the unearned cash premium paid by them to secure said policies, did not operate as a cancellation of said policies.

*Error from Miami District Court.*

THE opinion states the facts. Judgment for the defendant *Company,* at the June term, 1888. The plaintiffs, *Manlove* and another, bring the case here.

*James D. Snoddy,* for plaintiffs in error.
*W. Freeland,* for defendant in error.

Opinion by STRANG, C.: December 13, 1883, the defendant company issued its policy of insurance to the plaintiffs in the sum of $3,000 upon their frame elevator and machinery therein. November 20, 1884, it issued its policy to the plaintiffs in the sum of $1,000 additional insurance upon the same property. Each of these policies was to run for the period of five years from date. The plaintiffs paid the defendant, as cash premium, $47.50 on the first policy, and also gave the defendant their premium note for the sum of $750; and on the second policy they paid the defendant a cash premium of $15, and gave their premium note for $250. On the night of July 7, 1886, the property so insured was entirely destroyed by fire. This action was brought to recover the amount of said policies as the loss suffered thereunder. On the trial of the case the defendant admitted the execution and delivery of the policies sued on; the total destruction of the property insured; that it was of the value of $8,000; and that the plaintiffs were entitled to a judgment for the amount claimed against the defendant, unless the defendant shows a good defense to the plaintiffs' claim, as follows: The defendant shows that it was organized under and pursuant to the provisions of the act of the legislature approved March 6, 1875; that said act was repealed by the act of March 7, 1885, but that the repealing act gave the defendant and other companies the right to continue business provided they complied with the provisions

of the later act by the 1st of December following; otherwise they should forfeit their charters. The defendant company failed to comply with the provisions of the new law, and thus forfeited its charter. Now the defendant claims that the repeal of the act under which it was organized and did business, and its failure to comply with the provisions of the repealing act, operated to cancel all its outstanding policies. We do not think so. The legislature of 1885, in the passage of the bill of March 7 of that year, simply provided that mutual fire insurance companies, like the defendant company, should forfeit their charters and cease to issue policies or do new business unless they complied with the provisions of that act within the time indicated therein. The legislature did not intend nor attempt to cancel any policies of such companies outstanding at the time. Such policies were contracts, in which the holders had an interest that could not be destroyed by legislative action.

For a second defense, the defendant alleges that the directors of the defendant company, at a meeting of the policy-holders, December 1, 1885, of which the plaintiffs had notice, but which they failed to attend, decided to quit business, and appointed W. B. Brayman, attorney of the company, to close up the affairs of the company, directing him to notify policy-holders that the company would not be liable for any loss occurring after December 31, 1885, which notice Mr. Brayman says he sent to the plaintiffs. Counsel for plaintiffs argues in his brief that Brayman's evidence does not show that he sent notice to the plaintiffs. From our view of other matters connected with this alleged defense, it is not very material whether he sent the notice or not; hence we accept the defendant's position that such notice was sent to the plaintiffs as alleged. Having decided to close up the business of the company, the defendant claims that it had a right, under the following provisions contained in each of the policies sued on, to cancel them: "This policy, because of increased risk, or for any other cause, may be canceled, on the company giving notice thereof and returning a ratable proportion of the original cash

premium to the assured for unexpired time." Conceding that defendant gave plaintiffs notice that it had canceled their policies, to take effect on and after December 31, 1885, there is nothing in the record which shows that any of the original cash premium paid by the plaintiffs when they secured their policies was returned to them. The defendant was not authorized by the provision in the policies to cancel them except upon condition that it returned to the plaintiffs the ratable proportion of the original cash premium. Counsel for defendant notices this point in his brief, and says that no complaint was made because a part of the premium was not returned. With the agreement which was made a part of the case on the trial, it was not necessary for the plaintiffs to complain of this. The defendant admitted that the plaintiffs were entitled to judgment against it for their claim unless it showed a good defense. Under this agreement, if the defendant intended to rely upon a cancellation of the policies as matter of defense, it was the duty of the defendant to show that such cancellation was authorized. There is nothing in the record to show that the premium notes given by the plaintiffs, amounting to the sum of $1,000, were returned to them. We would think these must be returned to the plaintiffs if their policies were to be canceled. If the company by its say so, and notice thereof, cancel all its policies, it could have little or no use for premium notes, and certainly no use for them after the cancellation of the policies took effect, unless in the meantime, before the cancellation of the policies took effect, it should suffer a loss or losses, and then only for the purpose of assessments to pay said loss or losses.

We do not think the defendant's action in relation to the cancellation of the policies sued on in this case operated to cancel said policies, and therefore this defense is not good. We therefore recommend that the judgment of the district court be reversed, and the case remanded for a new trial.

By the Court: It is so ordered.

All the Justices concurring.