SAVAGE, RESPONDENT, v. PHŒNIX INSURANCE COMPANY, APPELLANT.

[Argued March 22, 1892.  Decided September 15, 1892.]

INSURANCE POLICY—*Arbitration clause.*—It is no defense to an action upon an insurance policy, which contained an arbitration clause, requiring an award of arbitrators as a condition precedent to a right of action, that the amount of loss was not fixed by arbitration and award as required by such clause, where the insurer denied all liability whatever under the policy, asserting that it was not in force when the loss occurred, and repelled every effort on the part of the insured to obtain an adjustment of the loss.  (*Randall* v. *American Fire Ins. Co.* 10 Mont. 340; 24 Am. St. Rep. 50.)

SAME—*Notice of loss.*—And where such policy contained a clause requiring the insured in case of loss to give notice in writing forthwith to the company, it is no defense to an action upon the policy that such written notice was not given, where the company, without waiting for a formal written notice, denied all liability thereunder.

SAME—*Premium—Evidence of payment.*—In the case at bar the defendant denied the payment of any premium and alleged the cancellation of the policy for such delinquency before the loss.  Plaintiff's son testified as to having paid the defendant's agent the premium recited on the face of the policy, and thereafter, the premium having been raised, to having paid a further sum, the receipt of which was indorsed on the policy.  Plaintiff's husband testified that he gave his son the money to make such payments, and that no premiums were owing by the family.  The payments in question were denied by the agent. *Held*, that the evidence was sufficient to support a finding by the jury that such payments were made.

SAME—*Notice of cancellation.*—A letter from the insurer to the insured notifying her of the effect of a failure to pay the premium, and directing attention to the cancellation conditions of her policy, is not a sufficient notice to terminate the policy; particularly where, the premium being in fact paid, the insurer does not refund or offer to refund the amount of unearned premium, as required by the policy in case of a cancellation.

*Appeal from Seventh Judicial District, Custer County.*

Action upon an insurance policy.  The cause was tried before MILBURN, J.  Plaintiff had judgment below.  Affirmed.

Statement of facts, prepared by the judge delivering the opinion.

This is an action to recover $800 insurance, alleged to be owing aud due respondent by virtue of an insurance policy issued by appellant to respondent, whereby the former insured the latter against loss or damage of certain household furniture, situate in a certain dwelling-house in Miles City, Custer County, Montana, by fire, and the subsequent damage in part, and total destruction in part, of said property by fire, while said insurance contract was in force.

It appears that in getting the issues settled the complaint was twice amended, and, as amended, filed.    The facts alleged in the second amended complaint as the cause of action may be briefly summarized as follows: That defendant is a corporation, organized and existing under the laws of the State of New York, for the purpose of doing the business of a fire insurance company ; that during all the time stated in the complaint defendant was engaged in such business, under its said corporate name, at said city, by and through its duly authorized agent, Charles W. Seyde ; that during all such time plaintiff was the owner of certain household furniture, described in the complaint, situate in a certain dwelling-house in said city, also described in the complaint ; that on August 4, 1888, at said city, in consideration of $13.20 as premium paid by plaintiff to defendant, through its said agent, defendant then and there made and delivered to plaintiff its certain policy of insurance, in writing, of said date, whereby defendant insured plaintiff against loss or damage to said property by fire to the amount of $800 ; that on November 20, 1888, while said policy was in force, plaintiff was required by defendant's said agent to pay defendant, on account of its having raised the rate of insurance on said property, an additional sum, as premium on said policy, of $6.80, which sum plaintiff paid defendant, through its said agent, who acknowledged receipt thereof for defendant by indorsement on said policy of insurance ; that on June 30, 1889, while said policy was in force, and while said property was owned by plaintiff, and situate as aforesaid, a large portion thereof, of the value of $775, was entirely destroyed by fire, and another portion thereof, of the value of $285, was greatly damaged, and thereby plaintiff

sustained damage and loss to the amount of $1,060; that said fire originated in neighboring buildings without the fault of plaintiff; that verbal notice of said loss was given to defendant, through its said agent, the next day following the fire, and written notice thereof was given defendant through its said agent on the thirtieth day of July, 1889, and on the same day plaintiff furnished to defendant, through its said agent, proofs of said loss, as required by the terms of said policy, setting out in detail the items of said property entirely destroyed, and also the items damaged by said fire, with value of each item destroyed, and the amount of damage to items not totally destroyed; that said proofs of loss so furnished to defendant were duly verified, as required by the terms of said policy, and an affidavit of a notary public was attached thereto, setting forth that he was not concerned in the loss sustained by plaintiff by reason of said fire, nor related to plaintiff; that he had examined and knew the circumstances attending the loss, and that he verily believed the plaintiff had, without fraud, negligence, or fault on her part, sustained loss on the property described in said policy of insurance numbered 94,415 of the Phœnix Insurance Company of Brooklyn, N. Y., and that the loss sustained by plaintiff by reason of said fire, and the destruction and damage of said property, was the sum of $1,060; that thereafter, on the 19th of August, 1890, defendant, through its duly authorized agents, Brown, Craig & Co. of San Francisco, Cal., returned said proofs of loss, together with the affidavit of the notary public, and said written notice of loss, to Charles W. Savage, attorney in fact for plaintiff, accompanied by a communication, in which said defendant, through its last-named agents, "disclaimed any liability under said policy, and refused to pay such loss, or any part thereof, claiming that the said policy of insurance had been canceled by defendant prior to the date on which said property was destroyed or damaged by fire;" that plaintiff never received from said company any notice of cancellation, nor any return premium, nor had any means of knowing that said policy of insurance had been canceled by said company, but, on the contrary, plaintiff, through her attorney in fact, Charles W. Savage, was informed by the said agent Seyde, on the day subsequent to the destruction and injury to said property, "that said policy of

insurance was all right, and that the matter would be properly attended to as soon as proofs of loss were furnished by plaintiff, and, as plaintiff is informed and believes, said policy of insurance was never canceled;" that ever since August 19, 1889, defendant has disclaimed any liability under said policy of insurance, and has refused to pay said loss, or any part thereof; that plaintiff duly performed all the conditions of said policy on her part to be performed; wherefore plaintiff demands judgment for $800, and costs.

Defendant answered the complaint, denying the issuance or delivery of said policy, or the receipt of said sum of $13.20 as premium, or the receipt of the additional sum of $6.80, or any other sum, as premium, or the acknowledgment of receipt of any sum, through said agent, for the issuance of said alleged policy of insurance; and further denying that defendant ever, for any consideration, or by any contract or policy, agreed "to make good to plaintiff any loss or damage whatever." Admitted that the property mentioned may have been damaged or destroyed, but denied that at the time of said fire, or at any time, any contract or policy of insurance was in force or existing between the plaintiff and defendant, whereby it insured plaintiff against loss happening by reason of said destruction or injury to said property. Denied that loss or damage resulted to plaintiff, by reason of said fire, to the amount of $1,060, or in any sum greater than $100; or that plaintiff at any time performed any conditions of any policy alleged to have been issued to her by defendant; or that any notice of any loss sustained by plaintiff was at any time given defendant; or that written notice of any such loss or damage "was given to defendant on the thirtieth day of June, 1889; or that any proofs of loss, as required by the terms of said policy, were ever furnished defendant, through its agent, or otherwise; or that any pretended proofs of loss furnished defendant through its agent or otherwise were verified by plaintiff, or by any other person, or by any notary public; or that any proofs were ever presented which contained any statement of any notary public whatsoever." Admits the return of certain papers to plaintiff "through its authorized agents, Brown, Craig & Co. of San Francisco, but denies that the same were proofs of loss, or that the same were of any kind, character, or nature of which defend-

ant was bound to take notice; and denies that the same referred to any contract or policy of insurance issued by defendant at any time or place." Admits "that defendant refused to pay any loss or any part of loss, at any time; and avers that the reason of such refusal was based upon the failure of plaintiff to fulfill any of her engagements, as hereinafter stated, and by reason of such failure no loss or claim was then due or payable; and denies that defendant refused to pay said loss upon any other or different grounds than those heretofore and herein stated in this answer." Further denies that plaintiff failed to receive notice of cancellation of said policy, or was without means of knowing that the same was canceled. Admits that plaintiff never received any return premium. Denies that defendant, through any agent, subsequent to the fire, informed Charles W. Savage, agent of plaintiff, that any insurance policy issued by defendant to plaintiff was in force, or that any loss or claim would receive consideration. Admits "that on the 19th of August, 1889, and ever since, defendant has disclaimed any liability to the plaintiff, and avers the ground therefor to be as hereinafter stated, and that the same was not done at any time, nor in a manner which in any degree misled the plaintiff."

And for further affirmative matter of defense alleges "that on or about the fourth day of August, 1888, and by a supplemental agreement made on or about September 20, 1888, defendant agreed with plaintiff to issue her a policy of insurance for $800, covering and insuring the personal property mentioned and described in plaintiff's complaint, on the express agreement that plaintiff should pay defendant the sum of $22, lawful money of the United States; and that said insurance should be subject to certain conditions, limitations, and requirements, constituting part of the consideration for the issuance of said policy, stipulated and agreed between the parties to be performed as conditions precedent to plaintiff's right to recover for any loss or damage which might happen to said property while so insured, which conditions, limitations, and requirements are recited in the answer by incorporating therein substantially all of the contents of the policy of insurance mentioned in the pleadings." Defendant further alleges that it issued to plaintiff, and she accepted, said policy on the terms, conditions,

and limitations therein set forth; but that plaintiff failed and refused to perform the conditions precedent set forth in said policy, and particularly that plaintiff has not at any time paid said premium of $22 to defendant, or to any person authorized to receive the same for defendant. That by the terms of said policy defendant was not liable thereunder until said premium was actually paid. That on or about November 27, 1888, defendant, through its said agent, Charles W. Seyde, made draft on plaintiff in the name of her agent, Charles W. Savage, at Livingston, Montana, for said sum of $22, accompanied by a statement "showing that plaintiff was indebted to the defendant in the sum of $22, if the plaintiff intended that the contract of insurance should be of binding effect upon defendant," which draft was presented to plaintiff, and her agent, Charles W. Savage, on or about November 29, 1888, and payment thereof refused, and the same was never paid. That thereafter, on December 7, 1888, defendant, through its agent, Charles W. Seyde, by registered letter, sent to and received by Charles W. Savage, agent and husband of plaintiff, at Livingston, Montana, "notified plaintiff of the effect of her failure to pay the $22 agreed upon as before stated, and directed her attention to the cancellation condition of her policy; but to pay said premium plaintiff then and there refused, and the same has not been paid. That by reason of the prolonged credit given by said Seyde, agent of defendant at Miles City, aforesaid, which credit, when extended beyond sixty days from the date of the policy, was contrary to the rules and regulations of this defendant, said Seyde thereby became liable to defendant as a penalty for thus extending credit to plaintiff beyond sixty days, which instructions required said policy to be returned at the expiration of sixty days, which penalty was in the sum of $3.70, and the same was paid by Seyde to defendant, not on account of plaintiff, nor for her benefit, but as part of the contract existing between Charles W. Seyde and defendant." That thereafter, Charles W. Savage, learning that the said agent had suffered such penalty by reason of said prolonged credit given to plaintiff, paid to said agent Seyde said sum of $3.70, to reimburse him for such penalty suffered. That neither plaintiff, nor any one for her, has ever paid defendant said premium on said policy,

or any sum in reference thereto, except said $3.70. That by the terms of said policy, in the event of loss or damage, plaintiff agreed to give notice in writing of said loss to defendant forthwith, which notice plaintiff failed to give, and never gave any notice thereof in writing until the thirtieth day of July, 1889, being thirty days after said fire. That by the terms of said policy plaintiff agreed, in the event of loss or damage to said party thereunder, to render to defendant a particular account of the loss, signed and sworn by her, which plaintiff failed to do. That the only papers relative to said loss were the papers addressed to Charles W. Seyde, marked Exhibits "A" and "B," attached hereto, and made a part hereof—Exhibit A being a list of goods destroyed by fire, dated July 29, 1889, and Exhibit B being a written notice to Charles W. Seyde of the occurrence of a fire. That said papers were not addressed to defendant, nor signed or sworn to by plaintiff. That said papers, if the same, had been signed and sworn to by plaintiff, and addressed to defendant, are not proof of loss within the terms of said proposed contract of insurance, and are not such proofs of loss as the plaintiff agreed to furnish the defendant, had such contract been entered into as proposed, because it is not stated therein what the actual cash value of said property was at the time of said loss, nor the interest of plaintiff in said property, nor that plaintiff had any interest therein, nor does the certificate of the notary public attached appear to be that of the nearest notary public to the place of the fire, and in truth such notary was not the nearest notary public to the place of said fire. That no such inventory was furnished to defendant by plaintiff as required by said policy. That "plaintiff agreed that the sound value and damage of any property to be covered by said proposed policy of insurance should be determined by mutual agreement between plaintiff and defendant, and, failing to agree, the same should be submitted to arbitrators, and no loss should be due and payable until such arbitration was had; and defendant avers that it never did agree with plaintiff as to the sound value or damage of said property, and that no arbitration was permitted by the plaintiff before the commencement of this suit;" nor has defendant had an opportunity to have such an award, because "no such award could be made or

obtained until after the plaintiff had paid the premium" on said policy, and furnished "notice in writing forthwith of a claim;" nor until the inventory required by said policy had been furnished by plaintiff. That plaintiff has not performed any of the conditions required of her by said policy.

A voluminous replication was filed by plaintiff, not only denying the new matter averred in the answer, but, in addition to such denial, the replication reiterates and reaffirms substantially all the allegations of the complaint in a somewhat changed form of expression.

The jury impaneled and sitting on the trial of said action, after hearing the testimony offered, and arguments of counsel and instructions by the court, returned its verdict in favor of plaintiff for the recovery of said sum of $800 and costs; and judgment was entered accordingly. Thereupon defendant moved the court for a new trial on the ground of alleged error in law occurring at the trial, and insufficiency of the evidence to justify the verdict. This motion was overruled, and defendant prosecuted this appeal from said order, and also from the judgment.

*Kinsley & Blackford*, for Appellant.

*Middleton & Light*, for Respondent.

HARWOOD, J.— Appellant's counsel first insist that a party pleading a conditional contract, setting out its terms, and stating the cause of action thereon, cannot, after demurrer is sustained, upon leave of court allowing an amendment, "plead another and different contract, unconditional in its character and legal effect, showing a different cause of action from that originally stated."

This may be granted, and we do not see that the proposition is applicable to the case at bar. It is not pointed out how any such departure occurred in the pleadings filed in this case. The cause of action stated, whether completely or defectively, in the several complaints filed, is founded upon one and the same contract, namely, the alleged policy of insurance; and the purpose of the action is to recover the sum of $800, alleged to be due plaintiff by reason of said contract of insurance, and the

loss alleged.   It is true the pleader in one complaint avers facts
as to the performance of certain conditions of said policy on the
part of plaintiff, and facts relied on to justify her delay in the
performance of other conditions thereof, and also alleges facts
concerning the conduct of defendant in relation to the alleged
demands of plaintiff on defendant in her attempt to obtain a
settlement thereof, which are not alleged in the other complaints
filed.   But it does not follow therefrom that the cause of action
stated is a " different cause of action from that originally stated."

Much space in the brief of appellant's counsel is devoted to
a recitation of facts which they assert are admitted by reason
of the averment of such facts in the answer, and the failure of
plaintiff to properly deny the same in her replication.

The pleadings in this case whereby the issues were finally
settled (not including those which were superseded by filing
amended pleadings) occupy sixty-four type-written pages of the
record; the replication alone covering fourteen pages thereof.
The material questions of issue, however, are not numerous, as
plainly appears when these voluminous pleadings are carefully
analyzed.   After patient study of them, we cannot agree with
counsel for appellant that the averments of the answer are not
fully met by denials and the allegation of matters in avoidance
in the replication.   (Code Civ. Proc. §§ 109, 248; *Swenson* v.
*Kleinschmidt*, 10 Mont. 478.)

It is further contended by appellant that plaintiff cannot law-
fully recover in this action, because the amount of the alleged
loss was not fixed by arbitration and award, as provided by the
terms of said policy, in the event of disagreement as to the
amount of the loss.   The clause of the policy pointed to reads
as follows:   "The amount of sound value and of damage to
the property, whether real or personal, covered by this policy,
or any part thereof, may be determined by mutual agreement
between the company and the assured, or, failing to agree, the
same shall then, at the written request of either party, be sub-
mitted to competent and impartial arbitrators, one to be selected
by each party, the two so chosen — in case of disagreement —
to select a third, and the award of any two of whom, in writ-
ing, under oath, shall be binding and conclusive as to the
amount of such loss or damage, but shall not determine the

validity of the contract, nor the liability of this company, nor any other question, except the amount of such loss or damage."

"It is furthermore hereby expressly provided and mutually agreed that no suit or action against this company for the recovery of any claim by virtue of this policy shall be sustainable in any court of law or chancery until after an award shall have been obtained, fixing the amount of such claim in the manner above provided."

These conditions were set forth in the answer, and it is averred therein "that no such award has been obtained, nor has defendant had an opportunity to obtain such an award," because defendant "agreed with plaintiff that no such award could be made or obtained until after plaintiff had paid the premium aforesaid, and furnished defendant notice in writing forthwith of a claim for loss, nor until an inventory had been made, naming the quantity, quality, and cost of each article; and defendant avers that no premium has ever been paid, no notice was given forthwith in writing of any loss, nor has any inventory been made as aforesaid, nor has plaintiff done or performed any of the conditions precedent to be performed to entitle the plaintiff to an award under such proposed contract of insurance."

The defense that no arbitration or award was had fixing the amount of said loss appears to be without force when considered in connection with the facts shown in this case. It appears that very soon after said loss occurred, when plaintiff sought an adjustment and payment thereof, she was met by a denial on the part of defendant, through said agent Seyde, of all liability under said policy, and the assertion that said policy was not in force when said loss happened. Defendant has constantly maintained that position, and consistently declined to entertain any claim of plaintff relating to said insurance, or to proceed in any manner, either by arbitration or otherwise, towards an adjustment and settlement of said loss. Under these conditions, plaintiff could not obtain an award of the amount of said loss by arbitration by the mutual co-operation of both parties in choosing arbitrators and otherwise proceeding as provided by the policy, and for this reason she is not prejudiced by the absence of such arbitration and award. Moreover,

the arbitration provided for in said policy was to take place when disagreement arose as to amount of loss. No such disagreement ever arose concerning the amount of the loss in question. The disagreement in this case was an absolute and unconditional denial of the existence of said alleged policy, or any liability thereon by defendant; while plaintiff maintained on her part that said policy was in force when said loss occurred, and that defendant was liable therefor to the amount stated in said policy. Defendant, consistently with the position it assumed as to said alleged policy, and its liability thereunder, repelled every effort made on the part of plaintiff to obtain an adjustment of said loss. It plainly appears from the attitude of the parties that the occasion for resorting to arbitration did not and could not arise while such attitudes were maintained. (*Randall* v. *American Fire Ins. Co.* 10 Mont. 340; 24 Am. St. Rep. 50, and cases cited.) The assertion of that defense appears strangely inconsistent and illogical when viewed in connection with other positions assumed by defendant in its answer, because insisting that arbitration should have been had to ascertain the amount of loss carries with it the implication that a contract of insurance existed; that defendant was liable in some amount; that merely an erroneous valuation of the property destroyed was made by plaintiff; and that defendant would have co-operated in seeking an agreement as to the amount of loss, and concurred in such arbitration, if necessary. These implications are in direct antagonism to the main ground of defense set up, namely, that the alleged policy of insurance was not in force.

It is further contended by appellant that the condition of said policy was not fulfilled on the part of plaintiff in reference to giving notice of such loss to defendant. The policy required that "persons sustaining loss or damage by fire shall forthwith give notice in writing to the company." It is not pretended that notice was withheld, or that defendant did not have actual and immediate notice of said loss. The facts show that defendant had notice, through its said agent Seyde, at the place where said fire occurred, and had full knowledge of, and opportunity to investigate said loss; that plaintiff, in person and by her agent, immediately after said fire, communicated with defendant

through said agent Seyde concerning the policy in question, and the alleged loss thereunder, and submitted said policy to defendant, through said agent, but no written notice was then given. It further appears without dispute that defendant, through said agent, without waiting for formal written notice of said loss, interposed in the matter of plaintiff's claim of insurance under said policy, and asserted to plaintiff that defendant was not liable under said policy, which plaintiff was claiming to exist between herself and defendant. These facts show that all reason for giving such notice in writing was removed by the presence and conduct of defendant in relation to the matter in question. (*Clark* v. *New England etc. Ins. Co.* 6 Cush. 342; 53 Am. Dec. 44.) It is a principle sanctioned by universal approval that even the force of law ceases when the reason therefor ceases. Another principle is that notice required in proceedings of most solemn nature may be waived by appearance and participation of the parties concerned in the proceedings in question. Nevertheless, plaintiff, in seeking to carry out the requirements of said policy on her part, on or about the thirtieth day after said fire occurred, delivered to defendant, through said agent, a written notice of the occurrence of said loss. Defendant, through its general agents, Brown, Craig & Co., returned said papers, saying: "We received through Mr. Charles Seyde, agent for the Phœnix Insurance Company of Brooklyn, at Miles City, your letter to him, notifying him of the burning of the property claimed by you as insured by said company under policy No. 94,415." After thus receiving said paper, and referring to it as "notifying" said agent of said loss, defendant claims in its defense to this action that it was not such a notice. The claim that the company had no sufficient notice of said loss is, we think, without merit.

The substantial issue in this case was whether or not the premium for said insurance had been paid by plaintiff. The pleadings on the part of plaintiff alleged the payment of the premium required by defendant for said policy. On the part of defendant it was denied that any consideration for the alleged insurance had been paid, and that for such delinquency the policy in question had been canceled before the fire. Upon

this issue the jury found for plaintiff, and there is evidence in the record sustaining that finding. The policy bears date August 4, 1888, and it appears therefrom that it was first issued in consideration of $13.20; and it is recited in the policy that "the Phœnix Insurance Company of Brooklyn, New York, in consideration of the conditions, limitations, and requirements of this policy, hereinafter mentioned, and of the receipt by this company of $13.20, will indemnify Mary E. Savage of Livingston, Montana, against loss or damage by fire to the following specified and located property, only to an amount not exceeding the actual cash value of the property herein described at the time of such loss, and in no event to exceed $800." George Savage, plaintiff's son, testified that some time during August, 1888, money was left with him by plaintiff's husband, sufficient to pay said premium of $13.20 to said agent Seyde, and that he was requested to pay the same to said agent; that on the following morning after he received said money he went over and paid Mr. Seyde the amount, being something over $13. He testified that two or three weeks afterwards "they sent me money from Livingston, to pay the balance on the policy to Mr. Seyde. It was six or seven dollars; somewhere along there. I cannot state the amount. I went there and paid Mr. Seyde seven or eight dollars. He wanted to know if I wanted the policy. I told him, 'No,' but that he could send it to Livingston." This witness further testified that he did not know whether those payments were intended to apply on the policy in question or not.

Charles W. Savage, husband of the plaintiff, testified that the policy in question was issued somewhere about the 1st of August, and was sent to him at Livingston. In the course of his testimony, he said: "I came down here [Miles City] during the latter part of August on business, and while here went to Mr. Seyde's office to pay for this policy, but could not get in. Saw my son George. Told him I went to pay for that policy, and would leave the money with him, and told him to go and pay it. Gave him $15. I told him it was something about $14. Did not owe Seyde any premiums for insurance, except on this particular policy, at that time. About the latter part of August I received a letter from Mr. Seyde, stating that

the rate had been raised, and wanted the policy returned. I returned this policy to Mr. Seyde. He stated the amount had been raised, but I don't remember the exact amount. I sent back the policy to Mr. Seyde, and a check payable to my son George for $10, and told him to pay whatever the premium was. The policy was returned to me some time during the month of September. This red ink indorsement was on the face of it at that time." A letter from said agent Seyde was identified by this witness as the one which accompanied the policy in question when it was first sent to Livingston, which letter was introduced in evidence, and reads as follows: "Your Phœnix policy No.1,029, on furniture in dwelling in rear of store, expired on the 4th instant. Under instructions of Mr. George Savage, I have renewed the risk, and hand you enclosed new policy, No. 94,415. Your remittance of $45, of July 23d, came duly to hand. Many thanks." Witness Charles W. Savage, in his testimony, explained that the remittance of $45, mentioned in said letter, had no relation to policy No. 94,415 in question in this case, but was in payment for another policy witness had received from said agent. In this connection the witness said: "I paid Mr. Seyde everything I owed him. That payment of $45, with other payments, settled everything I owed him."

In two instances, witness Charles W. Savage testifies that when said money was left with George Savage to pay the respective amounts called for as premium on the policy in dispute in this case, no other sum was owing to said agent for insurance policies issued to members of the Savage family at Livingston. This witness testifies that the money left with George Savage to pay said agent was for the purpose of making the payments required on the policy in question in this action, and, if no other money was owing to said agent on any other account at the time, by members of the Savage family at Livingston, these facts, which are not disputed by any testimony offered on the part of defendant, tend to show that said payments, if made, were made upon the policy in dispute here, notwithstanding George Savage did not know on what particular policy the payments were intended to apply.

The indorsement on the policy mentioned in the testimony of Charles W. Savage reads as follows:—

"Indorsement:     MILES CITY, MONT., Sept. 20, 1888.

"The rate on this risk having been advanced to $2.75, the receipt of $6.80 additional premium is hereby acknowledged.

"CHAS. W. SEYDE, Agent."

This indorsement was said to have been made in red ink, and its terms positively declare the receipt of said sum of $6.80 as additional premium on said policy by said agent. With this indorsement said policy was returned and delivered to plaintiff. According to the testimony of agent Seyde, when he made and delivered this acknowledgment of receipt of said latter sum, neither that sum, nor the original sum of $13.20, premium first required, had been paid, and yet he indorsed on the policy a direct and positive acknowledgement of the receipt of said $6.80, and delivered the policy to plaintiff. This would seem to be a peculiar method of doing business if he was not paid said sum. His testimony is in direct conflict with the testimony of George Savage as to the payments which the latter asserts he made, and this is the principal conflict in the testimony offered in the case. George Savage testified that he paid the amounts required at two different times. Charles W. Savage testifies that he delivered those two sums to his son George, with direction to make said payments, and, in addition to this, it is shown without dispute that the policy, after receiving the indorsement acknowledging the receipt of $6.80 thereon, was forwarded to Livingston by said agent. This latter circumstance shown in evidence may have been the preponderating fact which drew the minds of the jury to the conclusion shown in its verdict.

Appellant argues that the premium on $800 insurance at the rate stated, $2.75 per hundred, would amount to $22, and plaintiff does not claim to have paid more than $20; therefore plaintiff did not pay the full amount of the premium at said rate required for said policy. That is true, and shows a mistake on the part of defendant through its agent Seyde. But it does not follow that the insurance fails because defendant did not charge as much premium therefor as it may have proposed to charge. If $13.20 was sufficient consideration for the issu-

ance of the policy in the first instance, $6.80 additional premium would be sufficient consideration for the reissuance thereof.

Counsel for appellant insists that it is shown by the evidence that said policy was canceled prior to the loss. The condition of the policy as to the termination thereof reads as follows: "This insurance may be terminated at any time at the request of the assured, in which case the company will retain only the customary short rates for the time the policy has been in force. The insurance may also be terminated at the option of the company, on giving notice to that effect, and refunding a ratable proportion of the premium for the unexpired term of the policy." It is alleged in defendant's answer that "on the seventh day of December, 1888, defendant, through its said agent, Charles W. Seyde, by registered letter, addressed to Charles W. Savage, agent and husband of the plaintiff, at Livingston, which letter was duly received by the plaintiff in this action, notified the plaintiff of the effect of her failure to pay the $22 agreed upon as before stated, and directed her attention to the cancellation conditions of her policy; but to pay said premium plaintiff then and there refused, and the same has not been paid." This averment is not to the effect that said policy was canceled by defendant, by complying with its terms in that respect, but the averment is that, in said communication to plaintiff, defendant "directed her attention to the cancellation conditions of her policy." Moreover, it is admitted that defendant did not refund, or offer to refund, the amount of unearned premium, as part of the act of cancellation of said policy, if defendant intended to cancel the same. If the premium was paid, as found by the jury, the terms of the policy required defendant to refund a ratable proportion thereof, in order to terminate the policy; and it was not within the conditions of the policy to terminate it arbitrarily, without fulfilling that requirement, by calling the attention of the assured to the cancellation condition of the policy.

Appellant contends that the court committed error, both in giving certain instructions to the jury, and in refusing to give others requested by appellant. We have carefully reviewed the instructions, and find that the law applicable to the case is fairly and fully presented to the jury in them. These instructions, we

observe, are very favorable to defendant, and we find no error in this branch of the case.

Neither the assignments of error, nor the proposition that the verdict is unsupported by evidence, can be sustained. The judgment and the order overruling defendant's motion for new trial will therefore be affirmed.

*Affirmed.*

BLAKE, C. J., and DE WITT, J., concur.