T. D. HARRINGTON et al., Appellants, v. BREMER COUNTY FARMERS MUTUAL FIRE INSURANCE ASSOCIATION, Appellee.

INSURANCE: Cancellation of Policy—Abortive Attempt to Cancel. An attempted cancellation by the *insurer* of a policy of insurance in a mutual fire insurance association is a nullity when the insurer neither returns nor tenders to the insured all advance assessments less the insurer's pro-rata part thereof. (Sec. 9057, Code of 1924.)

INSURANCE: Cancellation of Policy—Acquiescence. A statement by the insured to the insurer to the effect that he (the insured) did not like the steps taken by the insurer in canceling a policy does not constitute an acquiescence in such cancellation, the truth being that the cancellation was a nullity, though this fact was unknown to the insured.

. Headnote 1: 26 C. J. pp. 141, 142; 32 C. J. p. 1252; 29 Cyc. p. 92. Head-note 2: 26 C. J. p. 143; 32 C. J. p. 1254; 29 Cyc. p. 92.

Headnote 1: 13 L. R. A. (N. S.) 884; L. R. A. 1916F, 444; 14 R. C. L. 1012.

*Appeal from Bremer District Court.*—C. H. KELLEY, Judge.

DECEMBER 16, 1926.

REHEARING DENIED MARCH 11, 1927.

Action in equity upon a certificate of insurance of a mutual fire insurance association. The lower court dismissed the petition, and the plaintiffs appeal.—*Reversed and remanded.*

*W. H. Wehrmacher* and *Mears & Lovejoy*, for appellants.

*Sager & Sweet*, for appellee.

VERMILION, J.—The action is in equity, to recover upon a policy of fire insurance for the loss by fire of the property insured, and to compel the insurer, a mutual fire insurance company, to levy an assessment upon its members to pay the judgment sought. The policy covered a five-year period, commencing September 30, 1921. The fire occurred on October 7, 1924. The only defense presented was that the policy had been canceled by the association, prior to the loss, and was, therefore, not in force at that time. It is conceded that, on November 26, 1923, the secretary of the association sent, by registered mail, and the appellants on the following day received, a written notice, purporting to cancel the policy on November 26th.

1. INSURANCE: cancellation of policy: abortive attempt to cancel.

In the view we take of the case, it is unnecessary to consider the objections made by appellants to the form of this notice, or their contention that it was ineffectual to cancel the policy because it purported to do so two days after its date, while the statute, Section 9054, Code of 1924, required five days' notice. We take occasion to say, however, that the case of *Oldfield v. Chevrolet Motor Co.*, 198 Iowa 20, relied upon by appellants to sustain the latter contention, is clearly to be dis-

tinguished upon the facts, and, we think, upon principle, as well. In that case, we were construing a contract that had apparently been prepared by one party in the carrying out of a general plan of extensive business dealings with local dealers, where the assent of the other was required as a condition of his becoming such a local dealer, and where the effect of the termination of the contract by notice was to deprive the other party to it of substantial, subsisting rights under it, which only the lapse of a short time and the continuation of the contract were required to mature. It was there held, under such circumstances, that the party preparing the contract and attempting to terminate it by notice was bound to a strict compliance with the provisions of the contract for its termination.

Here, the rights of the parties are fixed by statute, which gives to the insurer the right to terminate the contract of insurance, and prescribes the notice that must be given the insured to effect the cancellation. The only effect of the cancellation is to relieve the insurer from a future liability, and to put the insured to the necessity of procuring other insurance, if he so desires. In such case, it has been repeatedly held that a notice by the insurer of the cancellation of a policy of insurance, which is otherwise sufficient, is effective to cancel the policy at the expiration of the time required for such notice by the terms of the policy or a statutory provision, although the notice itself may say that the cancellation will be effective at an earlier date. *Ralston v. Royal Ins. Co.,* 79 Wash. 557 (140 Pac. 552); *Fritz v. Pennsylvania Fire Ins. Co.,* 85 N. J. Law 171 (50 L. R. A. [N. S.] 35); *American Glove Co. v. Pennsylvania Fire Ins. Co.,* 15 Cal. App. 77 (113 Pac. 688); *Hanover Fire Ins. Co. v. Wood,* 209 Ala. 380 (96 So. 250); *Commercial U. F. Ins. Co. v. King,* 108 Ark. 130 (156 S. W. 445); *Malin v. Netherlands Ins. Co.,* 203 Mo. App. 153 (219 S. W. 143); *Schwarzchild Sulzberger Co. v. Phoenix Ins. Co.,* 115 Fed. 653 and 124 Fed. 52.

I. Appellants contend that, if the notice was a sufficient compliance with the statute, yet there was no effective cancellation of the policy, because the pro-rata amount of the assessment paid by appellants was not returned or tendered by the insurer. No amount was returned or tendered to the appellants; and it is the contention of the appellee that it was entitled, under the statute, to retain all that had been paid on the policy.

Section 9037, Code of 1924, relating to mutual insurance associations, provides:

"Such associations may collect a policy and contingent fee, and such assessments, provided for in their articles of incorporation and by-laws, as are required to pay losses and necessary expenses, and for the creation and maintenance of an emergency fund for the payment of excess losses, and no part of such emergency fund can be claimed by any member whose policy expires or is surrendered for cancellation."

Section 9055 provides for the cancellation of the policy by the assured. Section 9056 reads:

"Upon the cancellation of any policy of insurance issued under the provisions of this chapter all obligations to the association having been paid, the unearned portion of any advance assessment paid, other than the emergency fund, shall be returned to the insured upon the surrender of his policy, the association retaining a pro-rata share for losses and in addition actual expenses incurred on said policy."

Section 9057 is as follows:

"When the policy is canceled by the association by giving notice thereof it shall retain only the pro-rata assessment."

These statutory provisions are substantially, and so far as the subject of mutual insurance permits, the same as those found in the standard form of policy prescribed by Section 9018.

The burden of establishing an effective cancellation of the policy was on the appellee; and a cancellation by the insurer could only be effected by a strict compliance with the statute. *Salmon v. Farm Property Mut. Ins. Assn.*, 168 Iowa 521; *Artificial Ice Co. v. Reciprocal Exchange*, 192 Iowa 1133.

It is well settled that for the insurer to effect a cancellation of the policy by notice, and without the consent of the insured, where, by the terms of the policy or a controlling statute, the unearned premium must be returned, a return or tender of such unearned premium must be shown. *Manlove v. Commercial Mut. F. Ins. Co.*, 47 Kan. 309 (27 Pac. 979); *Quong Tue Sing v. Anglo-Nevada Assur. Corp.*, 86 Cal. 566 (10 L. R. A. 144); *Illet v. North Star F. Mut. Ins. Co.*, 156 Minn. 128 (194 N. W. 1); *Savage v. Phoenix Ins. Co.*, 12 Mont. 458 (31 Pac. 66); *Davis Lbr. Co. v. Hartford Fire Ins. Co.*, 95 Wis. 226.

There is some conflict of authority upon the proposition where the policy is the standard form (Code Section 9018), and provides that it may be canceled at any time at the request of the insured, or by the company by giving five days' notice, and that, if the policy shall be canceled, the unearned premium shall be returned, on surrender of the policy, the company retaining the customary short rates; except that, when the policy is canceled by the company by giving notice, it shall retain only the pro-rata premium. The greater weight of authority, however, supports the doctrine that an effective cancellation of such a policy by the insurer by giving notice can only be made by a return or tender of the unearned premium. *German U. F. Ins. Co. v. Clarke Co.*, 116 Md. 622 (39 L. R. A. [N. S.] 829); *Tisdell v. New Hampshire F. Ins. Co.*, 155 N. Y. 163 (40 L. R. A. 765); *Buckley v. Citizens' Ins. Co.*, 188 N. Y. 399 (13 L. R. A. [N. S.] 889); *Taylor v. Insurance Co. of N. A.*, 25 Okla. 92 (105 Pac. 354). See, also, note to *Davidson v. German Ins. Co.*, 74 N. J. Law 487 (13 L. R. A. [N. S.] 884); and 32 Corpus Juris 1252.

In *German U. F. Ins. Co. v. Clarke Co.*, supra, the Supreme Court of Maryland cited the case of *Parsons & Arbaugh v. Northwestern Nat. Ins. Co.*, 133 Iowa 532, as holding to the contrary of the rule stated, overlooking the fact that in that case the cancellation was by the insured, and not by the company. The *Parsons* case is only authority for the proposition that the return of the unearned premium is a consequence, and not a condition, of cancellation by the insured.

Appellee asserts that the provisions of Section 9056 are controlling, and that the association was entitled to retain the actual expense incurred on the policy, in addition to a pro-rata share of any assessment for losses. But that provision is applicable only where the policy is surrendered by the insured, while Section 9057 declares in unequivocal terms that, when the policy is canceled by the insurer by notice, it shall retain "only the pro-rata assessment."

The policy, at the time it was issued, was for $7,800. The by-laws of the association provided that each applicant for insurance should pay a policy fee of $1.00, and one mill on the dollar of the amount of insurance. Appellant, accordingly, at that time paid to the association $8.80. All subsequent assess-

ments made prior to the time the notice of cancellation was given were paid, and were, we assume, for losses previously incurred. The question at this point is whether the association was entitled to retain all of the $8.80 paid at the issuance of the policy. Of this sum, $3.50 went to the agent who procured the policy. This was clearly an expense incurred on the policy which the association was not permitted to retain when it canceled the policy by notice. But if it was not that, then the amount paid, aside from the policy fee of $1.00, was, under Sections 9037 and 9038, an advance assessment. There is no claim that it belonged to an emergency fund, as provided for in Sections 9037 and 9040. If the amount be considered as an advance assessment, then the association was only permitted to retain a pro-rata share thereof for losses. The secretary of the association testified that the proportion of the unpaid losses and expenses of operating the company chargeable to the policy up to the time of giving the notice of cancellation was $5.56. His cross-examination indicated that this amount was excessive, owing to the failure to take proper account of a reduction in the amount of insurance in effect under the policy after the payment of a prior loss under it.

It is plain that, in any view of the matter, the association was not entitled to retain, under Section 9057, all of the amount so paid by the appellants.

It results that the attempted cancellation of the policy was ineffectual, because of the failure of the association to return or tender to the appellants all of the amount paid by them except the pro-rata amount chargeable to the policy.

II. The secretary of the association testified that one of the appellants, T. D. Harrington, after the attempted cancellation, asked why the company had "taken these steps," and said he

2. INSURANCE: cancellation of policy: acquiescence. "didn't like the steps the company had taken in canceling out his policy," and could not understand why they did it. This is relied upon as showing acquiescence of the appellants in the cancellation of the policy. The conversation is denied by Harrington. But if the statement was made, it seems to us to be rather in the nature of a protest against the "steps" taken by the company than an acquiescence in the claimed result of those steps. Moreover, no authority is shown in him to bind the other appellant by any

consent to the cancellation of the policy.   We think no acquiescence in the cancellation is shown.

The loss of the insured property, that its value was as claimed by appellants, and that proper proofs of loss were given, were conceded on the trial.

Upon the record; the plaintiffs were entitled to the relief prayed; and the judgment is reversed; and the cause remanded for a decree in accordance herewith.—*Reversed and remanded.*

All the justices concur.