## Richmond

## HALLIE H. HEPNER

v.

## AMERICAN FIDELITY LIFE INSURANCE COMPANY

October 5, 1979.

Record No. 771786.

Present: All the Justices.

*Oldric J. LaBell, Jr.,* for appellant.

*Harry J. Kostel* (*Jones, Blechman, Woltz & Kelly,* on brief), for appellee.

HARRISON, J., delivered the opinion of the Court.

Hallie H. Hepner alleges that the American Fidelity Life Insurance Company wrongfully cancelled his contract of employment, thereby depriving him of a bonus of $6,858.67 and a car allowance of $2,743.47 to which he was entitled. The sole issue is whether Hepner was discharged in accordance with the provisions of his contract of employment.

Hepner was employed in December 1971, as a sales agent by American Fidelity, and his contract provided that he was to receive commissions on policies procured by him of two percent to sixty percent of all premiums paid during the first year of each insurance policy's existence and a five percent commission for the second through the tenth policy years. The contract further stipulated that (1) if the plaintiff was not indebted to the company, and (2) if the contract was in force on December 1st of any year, the plaintiff was to be paid "a Bonus of 25% of the total Commission earned by such Agent during the 12 months period ending on the preceding October 31st" and an automobile allowance of "10% of the total commissions earned by such Agent during the 12 months period ending on the preceding October 31st, such allowance to be paid in 12 monthly installments commencing on December 1st."

The agency contract between plaintiff and defendant also contained two clauses detailing the manner in which the agent's employment could be terminated. One provided that should the agent fail to secure for the company any new paid life insurance during any period of ninety consecutive days, such failure would automatically terminate the contract, unless American Fidelity waived the provision in writing. The other section dealing with termination stated that "either party hereto may terminate this agreement without cause, by sending the other at last known address, by mail, thirty days' notice in writing to that effect," and that "[n]otice given by mail or delivery shall be deemed to be given at delivery."

In accordance with his agreement plaintiff worked in Virginia, maintaining contacts with the main office of the company in Pensacola, Florida, and with the company's general agent, Rowland and Schwaner Insurance Agency, in Newport News. The company and Hepner concentrated their insurance sales efforts on military person-

nel and only occasionally on nonmilitary personnel. The plaintiff was a productive sales agent from December 1971, until sometime in February 1975, when a regulation was issued, the effect of which was to limit the accessibility of enlisted men on military bases to life insurance salesmen. This category of military personnel had been the backbone of plaintiff's sales business, and Hepner testified that as a result his sales "literally ceased." It further appears that during this same period plaintiff was experiencing marital difficulties that ultimately resulted in a separation from his wife.

Plaintiff knew that his failure to procure new policies during the spring and summer of 1975 had permitted the company to consider his employment contract terminated. Hepner's efforts to have it reinstated prompted a letter addressed to him at 2 Drake Court, Newport News, Virginia, his last known address, from Gene McKinney, Director of Agencies for American Fidelity. The letter, dated August 19, 1975, referred to their three telephone conversations and expressed pleasure that Hepner anticipated returning to work. It noted that Hepner was "in the process of moving to Georgia with the intent of being back into full production by September 22, 1975," and that it was plaintiff's intention "to write part-time production in Virginia during the next thirty days." McKinney expressed the hope that Hepner would get his personal matters "straightened out so that you can start making money again."

Plaintiff argues that this letter constituted a waiver of the ninety-day production clause requirement. The company regards it as a letter of conditional reinstatement and contends that Hepner never in fact returned to employment status after its receipt by him. While there is testimony from which the trial court could have found that no policies were written by Hepner and accepted by the company during the period between September 1, 1975, and December 1, 1975, and only three or four policies between July and December 1975, the court, in reaching its decision, did not rely upon the ninety-day clause. It held that the company terminated Hepner's contract when it sent him a letter dated October 22, 1975, which reads as follows: "This is to inform you that your contract with our company will be terminated effective thirty (30) days from the date of this letter." The lower court held that this letter, sent to Hepner's last known address in Newport News, was in substantial compliance with plaintiff's contract of employment, which provided that his contract could be terminated by "thirty days' notice in writing to that effect."

The trial court found as a fact that Hepner never told the company "where he was" after leaving Newport News, and that by his actions

he had left the company under the impression that his address was 2 Drake Court, Newport News, Virginia. During the entire summer and fall of 1975, and without objection by plaintiff, the company continued to send Hepner's commission checks to him at 2 Drake Court, and these checks were forwarded to plaintiff at his mother's address in Fort Lauderdale, Florida. She, in turn, forwarded them to her son. When asked why he requested the post office in Newport News, Virginia to forward his mail to his mother's address, Hepner replied: "The original change of address I put in was when I left here to move my family to Smyrna, Georgia. And of course, after we split up, when I returned to Hilton Head Island, I thought it would be foolish of me to continue letting my mail be forwarded to Smyrna, so I had it sent to my mother, as my permanent address, because at that time I was not sure if I was going to be staying at Hilton Head, because I didn't know where I would be selling insurance at the time."

The evidence is conclusive that, during the year 1975, 2 Drake Court, Newport News was not only his last known address, but the address where mail addressed to plaintiff would most likely reach him. Plaintiff admits that during a portion of 1975, he did not have any definite plans. A substantial amount of his time was spent in transit between Newport News, Smyrna, Georgia, and Hilton Head, South Carolina. He spent several months aboard a boat at Hilton Head. Whether because of his marital situation, or the regulations which limited his accessibility to enlisted men on Army bases, plaintiff devoted little time and effort to selling insurance for American Fidelity during the period with which we are here concerned. This precipitated the company's letter of termination to Hepner, dated and postmarked October 22, 1975, mailed to his Newport News address and forwarded to the Fort Lauderdale address of plaintiff's mother. When asked how long the letter remained at his mother's address, plaintiff replied, "Probably twenty-four hours at the most because she normally referred all mail directly, or immediately, to me as soon as she received it." While plaintiff says he did not receive this letter until November 3, 1975, he testified the letter should have arrived at Hilton Head about October 30th. Plaintiff further said that he went to Newport News during the latter part of October 1975, and on October 30, 1975, procured an application from a Mr. Etheridge, a man whom he knew socially. He told Etheridge that he needed a sale of an insurance policy because the company was going to cancel his contract and try to get out of paying him a bonus.

Plaintiff's position is that the October 22, 1975 letter of termination,

informing him that his contract would be terminated effective thirty days "from the date of this letter," was ineffective because his contract of employment provided for "thirty days' notice" in writing. He argues that the letter purported to terminate his employment on November 21, 1975, but that this did not give him the required thirty days' notice for cancellation because admittedly he did not receive the letter on the very date it was written. He says that if the notice was not sufficient to terminate his contract effective thirty days from October 22, 1975, it was ineffective to terminate it at any subsequent time, and that therefore the actual date on which he received the notice is immaterial.

Counsel for Hepner concedes that in determining what type of notice is effective to terminate a contract of employment or agency, the law makes a distinction if the cancellation of the contract would result in a forfeiture by the employee. Plaintiff argues that this case involves a forfeiture of compensation for services already performed and that the notice requirement of the agency contract should be strictly construed against American Fidelity, the party for whose benefit, he alleges, the provision was inserted. *Cartos* v. *Hartford Indemnity Co.,* 160 Va. 505, 169 S.E. 594 (1933).

In support of his position Hepner cites *Oldfield* v. *Chevrolet Motor Co.,* 198 Iowa 20, 199 N.W. 161 (1924). Chevrolet had contracted to give its agents a two percent rebate on all sales in the current year "providing your selling agreement is in force July 31. . . ." On July 13th, the manufacturer wrote Oldfield a letter, advising him that "[w]e are canceling your selling agreement . . . and the cancellation becomes effective within five days from the date of this letter." The company's contract with Oldfield provided that either party could cancel it by "five days' written notice to the other." The court held that the company had no right to cancel the contract by a notice for less time than five days. It further held that the notice was insufficient to effectuate a cancellation at the time specified in the letter and therefore insufficient to effectuate a cancellation of the contract at any time.

The plaintiff's reliance on *Oldfield* is misplaced for that case has been expressly limited to situations where the cancellation would work a forfeiture of the agent's substantial, subsisting rights that were about to mature. *See Harrington* v. *Bremer County Farmers Mutual Fire Insurance Ass'n,* 203 Iowa 282, 211 N.W. 383 (1926). In *Shain* v. *Washington National Insurance Co.,* 308 F.2d 611 (8th Cir. 1962), the law of Iowa was involved and controlled the decision. There, the agency contract provided for its termination "upon thirty days notice in writing." Notice was mailed by the company on April 30th, but received by the agent on May 1st. He was thereby advised of its ter-

mination "effective thirty days from the date of this letter." The agent, as does Hepner here, contended that since the notice of termination purported to end the agency sooner than the contract permitted, it was not in accord with the contract and was wholly ineffective. The court, after discussing *Oldfield* and *Harrington,* pointed out that *Oldfield* had been expressly limited to forfeiture situations. It observed that later Iowa courts had adhered to the general rule, which Circuit Judge Blackmun, presently Mr. Justice Blackmun, stated in *Shain* to be as follows:

> And it is the general rule that where a contract, whether it be one for employment or for insurance or of a different kind, requires written notice of cancellation upon a stated time, a notice failing to meet the time requirement, but otherwise appropriate is nonetheless effective upon the lapse of the time required by the contract. . . .

308 F.2d at 614. *See* Annots., 96 A.L.R.2d 272 (1964), 126 A.L.R. 1110 (1940), and 35 A.L.R. 893 (1925).

The issue involved here was also addressed by Judge Vinson, later Mr. Chief Justice Vinson, in *All States Service Station* v. *Standard Oil Co.,* 120 F.2d 714 (D.C. Cir. 1941). An oil station contract provided for cancellation by the company upon ten days' written notice. The company gave the notice "effective ten days from the date of this letter", and it was received by the service station the following day. The court found:

> The Service Station agreed by contract that ten days' notice sufficiently protected its position. It was notified in clear terms that the Standard Company was terminating the contract. The legal effect of the Standard Company's letter, therefore, should be that the contract came to an end ten days after its receipt by the Service Station. By giving the letter this effect, the Service Station received fully the protection to which it agreed, the period of notice is determined by the appropriate contract provision, and the Standard Company's definite, meaningful act is not an empty gesture. To hold that the letter had no effect because it mistakenly set a period short of that required would make a modern application of the brittle fifteenth century common law. . . .

120 F.2d at 715.

We find no element of forfeiture involved in this case. The contract expressly provided for termination by either party without cause.

Hepner agreed that the contract could be terminated upon thirty days' written notice, and he agreed that one of the conditions precedent to his receiving a bonus and an automobile allowance was that he be in the employ of the company on December 1st. As the court observed in *Shain, supra,* 308 F.2d at 616, "[i]f there was hardship here, it was due to the contract itself and to its failure to afford the plaintiff more adequate protection against termination."

The commission plaintiff was to receive on all premiums paid during the first year on policies that he procured, and thereafter for the second through the tenth policy years, is clearly stated. This was plaintiff's agreed compensation in which he could acquire a vested right. Additionally, and in an obvious effort to procure and to retain efficient, faithful and satisfactory selling agents, the company agreed to pay them a bonus and an automobile allowance *provided* they were in the employ of the company and were not indebted to it as of December 1st of any year. The company's obligation to pay Hepner a bonus and automobile allowance was a conditional obligation on its part, an obligation that never accrued for the reason that Hepner was not in the company's employ on December 1st of the year in question.

The finding of fact by the trial judge that Hepner's address in Newport News was his last known address is supported by credible evidence. When the company, on October 22, 1975, delivered its letter of termination to the post office, properly addressed to plaintiff at his correct last known address, it had done all that was required to give notice of termination to the plaintiff, in the manner provided by the contract. This letter was written and mailed in ample time to give plaintiff the thirty days' advance notice prior to December 1, 1975. The notice given Hepner was good after the contractual thirty-day period had run even though the notice purported to set an earlier date.

Accordingly, the judgment of the lower court is

*Affirmed.*