**Elwin K. SHAIN, Appellant,**

v.

**WASHINGTON NATIONAL INSURANCE COMPANY, Appellee.**

**No. 16959.**

United States Court of Appeals Eighth Circuit.

Oct. 9, 1962.

William L. Meardon and D. C. Nolan, Iowa City, Iowa, for appellant; Ansel Chapman, Iowa City, Iowa, with them on the brief.

Robert Osmundson, Iowa City, Iowa, for appellee.

Before SANBORN and BLACKMUN, Circuit Judges, and REGISTER, District Judge.

BLACKMUN, Circuit Judge.

By this diversity action Elwin K. Shain seeks an accounting and damages from Washington National Insurance Company for wrongful termination in 1957 of Shain's contracts as general agent for the defendant at Iowa City, Iowa. The case was tried to the court and resulted in a dismissal at the close of the plaintiff's evidence and in a consequent judgment for the defendant.

In 1943 Shain left the employ of another insurance company. For a small sum he then purchased the defendant's defunct Iowa City agency. Over the years successive written contracts of general agency were executed by Shain and the defendant. Each of these was on a form prepared by the company. Each provided:

"Termination hereof may be further had by either party hereto upon thirty days' notice in writing by U. S. mail to the last known address of the other party".

For fourteen years Shain fulfilled his duties as defendant's general agent at Iowa City. He developed the agency business to a point where it apparently had a substantial value. However, on April 30, 1957, the defendant mailed

Shain a letter reading in part as follows:

"We hereby give you notice of the termination of any and all contracts and agreements supplemental thereto which you hold with * * * this Company, effective thirty days from the date of this letter".

This was received by Shain on May 1.

Termination of the agency contracts thus would be effected, according to the literal language of the letter, on May 30, 1957. By the provisions of the contracts themselves, however, a proper notice received by Shain on May 1 could effect termination only on May 31.

Although the present controversy centers on the foregoing facts, the following additional details are also given some emphasis by the plaintiff:

1. When Shain's first contract was signed in 1943, the defendant's agency supervisor shook the plaintiff's hand and said, "Elwin, this is for life".

2. Until 1946 each of Shain's contracts contained a provision that it automatically terminated when he became 65 years of age. The problem of agent security was discussed at a company convention in March 1946. After that meeting this particular provision was stricken from the contract then in force. It was not contained in the later contracts. Shain was under 65 in 1957.

3. At the 1946 convention the defendant's president stated in substance that the company's agents had no need to worry about any pension or security plan and that they already had lifetime security from their renewals in accordance with their contracts so long as they continued to perform those contracts.

4. On May 15, 1957, the defendant mailed a letter to each policyholder being serviced by Shain. This asserted that Shain "has resigned as General Agent for our Company as of May 31, 1957". It went on to advise the policyholder of the consolidation of the Iowa City agency with the general agency in Cedar Rapids and to instruct him to make all future premium payments to the defendant's home office.

5. Shain had not resigned as general agent for the defendant.

6. On November 26, 1958, the defendant's Policyowners Service Section advised one teachers' group insurance certificate holder that Shain was the company's representative in Iowa City. After 1957 Shain continued to service that group contract. He wrote one life policy in the defendant after June 1, 1957. The defendant paid for Shain's Iowa agent's license for the year 1958–59.

The plaintiff's basic argument is that the notice of termination, being the mailed letter of April 30, 1957, purported to terminate the agency sooner than the agency contracts themselves permitted and thus was not in accord with those contracts and was wholly ineffective. The plaintiff further argues that the defendant, by its actions in 1943 and 1946 and thereafter modified and waived the termination provisions of the contracts and, in any event, is now estopped from availing itself of those provisions. The defendant's position is that the agency contracts were effectively terminated in due course by the letter of April 30, 1957; that the termination provisions of the contracts were not modified or waived; and that it is in no way estopped from claiming the benefit of those provisions.

The parties raise no question as to the applicability of Iowa law and we accept it as controlling.

█ The defendant insurance company has the burden of establishing the cancellation of the contracts. Artificial Ice Co. v. Reciprocal Exchange, 1921, 192 Iowa 1133, 184 N.W. 756, 759; Selken v. Northland Ins. Co., 1958, 249 Iowa 1046, 90 N.W.2d 29, 32–33; Spann v. Commercial Standard Ins. Co., 8 Cir. 1936, 82 F.2d 593, 596. But a provision in an otherwise valid contract that either party may terminate the agreement upon specified days' notice is itself valid. Myers Motors v. Kaiser-Frazer Sales Corp., 8 Cir. 1949, 178 F.2d 291; 17

C.J.S. Contracts §§ 396, 399; 12 Am. Jur., Contracts, § 434; 35 A.L.R. 895. And it is the general rule that where a contract, whether it be one for employment or for insurance or of a different kind, requires written notice of cancellation upon a stated time, a notice failing to meet the time requirement, but otherwise appropriate, is nonetheless effective upon the lapse of the time required by the contract. Lyon v. Pollard, 1874, 87 U.S. (20 Wall.) 403, 407, 22 L.Ed. 361; All States Service Station v. Standard Oil Co., 1941, 73 App.D.C. 342, 120 F.2d 714; E. I. Du Pont De Nemours & Co. v. Lyles & Lang Const. Co., 4 Cir. 1955, 219 F.2d 328, 340–341, cert. den. 349 U.S. 956, 75 S.Ct. 882, 99 L.Ed. 1280; Sharpe v. Great Lakes Steel Corp., S.D.N.Y.1950, 9 F.R.D. 691, 693–694. Other cases are collected in the annotations in 35 A.L.R. 893 and 126 A.L.R. 1110.

■ The Iowa case on which this litigation obviously pivots is Oldfield v. Chevrolet Motor Co., 1924, 198 Iowa 20, 199 N.W. 161, 35 A.L.R. 889. There the plaintiff possessed an automobile agency contract under which he was entitled to an additional rebate on purchases by him during the fiscal year ended July 31, provided the contract remained in force on that date and other conditions were met. The agreement also provided that either party could cancel it "by five days' written notice to the other". On July 13 the defendant's sales manager wrote the plaintiff a letter of termination stating, " * * * the cancellation becomes effective within five days from the date of this letter". It did not reach the plaintiff on the 13th so as to provide him with five days' written notice from that date. The plaintiff brought suit for the additional rebate. The Iowa Supreme Court said, pp. 162–163 of 199 N.W.:

> "It is clear that under the contract the appellee had no right to cancel it by a notice for a less time than five days, and that a notice declaring the cancellation effective within five days from a date one day prior to that on which it could, by any possibility, have been received by the appellant did not, under any method of computation, give five days' notice. * * * The inquiry, of course, is not at what particular date the contract was canceled, but whether a notice that, by its terms, did not conform to the requirement of the contract, was effectual to cancel it at all.

> "We perceive no theory upon which it can be held that the contract was canceled, unless it must be said that, notwithstanding the declaration in the notice that the cancellation would be effective within five days from its date, it nevertheless operated to work a cancellation at the expiration of five days from its receipt by the appellant. * * * The attempted cancellation was less than two weeks prior to the date on which the appellant would be entitled, if the contract were then in force, to nearly $3,000 of additional discount on purchases made under it during the year preceding. This situation presents no persuasive reasons for relaxing established rules of construction as to either the contract or notice in aid of so harsh a proceeding. * * *

> "It is imposing no undue hardship upon appellee to hold it to a strict compliance with the terms of a contract dictated by it, when it undertakes to enforce a provision for the cancellation of the contract under circumstances so advantageous to its interest."

The court thus flatly held that the notice declaring a cancellation at a time prior to that specified by the contract did not serve in that case to effect a cancellation at the expiration of the contract's stated period.

The Oldfield case at first glance appears to be pertinent Iowa authority in support of the plaintiff's position in the case now before us. Oldfield, however, has been limited. Two and a half years later the Iowa court decided Harrington

v. Bremer County Farmers' Mut. Fire Ins. Ass'n, 1926, 203 Iowa 282, 211 N.W. 383. This was a fire insurance case. The company's defense was cancellation of the policy prior to the fire. On November 26 the company mailed the insureds a notice of cancellation as of that date. The notice was received in the mail the following day. The governing state statute required five days' notice of cancellation. The Iowa Supreme Court decided the case in favor of the insureds on the ground that the company's failure to accompany its notice with a tender of the unearned pro rata assessment rendered the cancellation ineffective. It did not specifically pass upon the insureds' additional suggestion that the notice was ineffective for lack of timeliness but it observed, p. 384 of 211 N.W.:

"We take occasion to say, however, that the case of Oldfield * * * is clearly to be distinguished upon the facts and, we think, upon principle as well.

"In that case, we were construing a contract * * * where the effect of the termination * * * by notice was to deprive the other party to it of substantial, subsisting rights under it, which only the lapse of a short time and the continuation of the contract were required to mature. It was there held, under such circumstances, that the party preparing the contract and attempting to terminate it by notice was bound to a strict compliance of the provisions of the contract for its termination.

"Here, the rights of the parties are fixed by statute * * *. The only effect of the cancellation is to relieve the insurer from a future liability and to put the insured to the necessity of procuring other insurance, if he so desires. In such case, it has been repeatedly held that a notice by the insurer of the cancellation of a policy of insurance which is otherwise sufficient, is effective to cancel the policy at the expiration of the time required for such notice by the terms of the policy or a statutory provision, although the notice itself may say the cancellation will be effective at an earlier date."

The Harrington opinion was a unanimous one and was by the same justice who wrote the Oldfield opinion.

Another case, similar to Oldfield, and concerning what the court regarded as a forfeiture of $8,250 in commissions earned by a salesman, is Hubert v. Luden's Inc., 1955, 92 Ga.App. 427, 88 S.E.2d 481.

It seems obvious to us, from the language in Harrington, (a) that the Iowa court regarded its earlier holding in Oldfield as one based upon the presence, among the factual aspects of that case, of the element of forfeiture on the part of the plaintiff of a sizable sum already earned by him and due shortly to be paid, (b) that it was this factor which led to the strict construction and enforcement of that particular contract's time provision for cancellation, and (c) that the authority of Oldfield is limited to situations of possible forfeiture of "substantial, subsisting rights" about to mature.

We find support for this analysis in two opinions which discuss Oldfield and Harrington. In All States Service Station v. Standard Oil Co., supra, 1941, 73 App. D.C. 342, 120 F.2d 714, the court was concerned with a station contract providing for cancellation by the oil company upon ten days' written notice. The company gave the notice "effective ten days from the date of this letter". It was received by the service station the following day. The court, speaking through Associate Justice Vinson, later Mr. Chief Justice Vinson, said, p. 715 of 120 F.2d:

"The Service Station agreed by contract that ten days' notice sufficiently protected its position. It was notified in clear terms that the Standard Company was terminating the contract. The legal effect of the Standard Company's letter, therefore, should be that the contract came to an end ten days after its

receipt by the Service Station. By giving the letter this effect, the Service Station received fully the protection to which it agreed, the period of notice is determined by the appropriate contract provision, and the Standard Company's definite, meaningful act is not an empty gesture. To hold that the letter had no effect because it mistakenly set a period short of that required would make a modern application of the brittle fifteenth century common law. * *

"The Service Station relies heavily upon the case of Oldfield v. Chevrolet Motor Co. The Standard Company states that this case represents the decidedly minority view. In addition, it should be observed that the one who received the notice stood to lose a substantial rebate on purchases already made. Two and a half years later the same Judge writing for the same Court with five of the seven members unchanged stated that where the cancellation affects only future liabilty, as contrasted with the 'substantial, subsisting rights' in the Oldfield case, it has been repeatedly held that a notice is good after the contractual or statutory period has run even though the notice tried to set an earlier date. * * * " (footnotes omitted)

In In re Petroleum Carriers Co., D.Minn. 1954, 121 F.Supp. 520, 526, the court said of the Oldfield case:

"In essence it was a holding that the contract was not terminated in strict accordance with its terms and accordingly had been breached, but it did not hold that the aggrieved party was entitled to recover prospective profits for an indefinite future time. The items in dispute with reference to damages were based upon credits earned by the aggrieved party prior to breach and with respect to which the right of payment would shortly mature if the contract remained in existence. In its subsequent decision in Harrington * * * the

same court indicated that the rule of the Oldfield case was limited to situations where the termination of the contract would deprive the other party of 'substantial, subsisting rights under it, which only the lapse of a short time and the continuation of the contract were required to mature.' "

Shain urges that in the present case the notice did indeed materially impair substantial existing rights which he possessed. These were the lessening of the value of his general agent's renewal commissions and his inability to solicit the agency clientele he had developed. The immediate answer to this observation is that the contract expressly provided for termination by either party. This, then, was nothing other than what Shain had agreed to. If there was hardship here, it was due to the contract itself and to its failure to afford the plaintiff more adequate protection against termination. See E. I. Du Pont De Nemours & Co. v. Claiborne-Reno Co., 8 Cir. 1933, 64 F.2d 224, 233, 89 A.L.R. 238, cert. den. 290 U.S. 646, 54 S.Ct. 64, 78 L.Ed. 561. In addition, however, the right to solicit in the future was clearly not a "substantial, subsisting right" similar to the earned rebates in controversy in Oldfield. The same may be said of anticipated renewal commissions. It is true that upon termination of his general agency the renewal commissions thereafter accruing to the plaintiff were less than those he would have received had the agency continued. The difference was the increment paid the general agent. This is based, however, on the agency's servicing of insurance in force. It is payment for a service currently rendered and is not, as was the situation in Oldfield, an accumulation of amounts already earned by past services. The plaintiff concedes that if his contracts were effectively terminated, he has been paid all renewals due since the termination.

We therefore agree with the trial court that, upon the facts here presented, this case is controlled by Harrington, and the general rule noted above, rather than by

Oldfield. In view of its context, we do not regard the statement, cited by the plaintiff, in Black v. City of Santa Monica, 1936, 13 Cal.App.2d 4, 56 P.2d 256, 257, as creditable opposing authority here. Finally, our conclusion is in accord with the observation made by this court in Western Oil & Fuel Co. v. Kemp, 8 Cir. 1957, 245 F.2d 633, 642, that "Notice of termination is to be liberally construed, the true intent and purpose of the parties in the ordinary rules of trade being kept in mind".

In any event, we cannot say that the district court committed reversible error when it inherently concluded that the Supreme Court of Iowa, were this case before it, would hold that the notice of the cancellation was an effective notice. It reached on this issue a permissible conclusion which, as has been so often observed, this court will not reverse. Weiby v. Farmers Mutual Auto. Ins. Co., 8 Cir. 1960, 273 F.2d 327, 331; Village of Brooten v. Cudahy Packing Co., 8 Cir. 1961, 291 F.2d 284, 301.

 This brings us to the plaintiff's supplementary arguments. These rest upon the facts outlined above, namely, the intimations of a lifetime agency; the elimination from the contracts of the theretofore existing provision for automatic termination at age 65; the issuance to policyholders of the defendant's letter of May 15, 1957, when Shain was still acting in his general agent's capacity; the falsity of the statement in that letter that he had resigned; the defendant's continued recognition of Shain as the agent servicing the group policy; and the other contacts between the plaintiff and the defendant said to be inconsistent with final termination of his agency. But the libel count, contained in the plaintiff's complaint, is abandoned on this appeal. And we fail to find in these other facts anything of sufficient substance which could serve to avoid, on a theory of modification of the contract or of waiver or of estoppel, or otherwise, the effectiveness of the termination of the agency. Compare E. I. Du Pont De Nemours & Co. v. Clai-

borne-Reno Co., supra, 8 Cir. 1933, 64 F.2d 224, 232; Meredith v. John Deere Plow Co., 8 Cir. 1950, 185 F.2d 481, 482, cert. den. 341 U.S. 936, 71 S.Ct. 856, 95 L.Ed. 1364; Drake v. Block, 1956, 247 Iowa 517, 74 N.W.2d 577, 580. The fact situation here is far different from that recently presented to us in Minnesota Amusement Co. v. Larkin, 8 Cir. 1962, 299 F.2d 142.

The judgment of the district court is therefore affirmed.