HALL, Judge.
This appeal is from a judgment of the district court, in accordance with a jury verdict, awarding the sum of $750,000 to plaintiff-appellee, William Inabnet, against defendant-appellant, Pan American Life Insurance Company, for alleged breach and wrongful termination by defendant of the agency and general agency contracts between plaintiff and defendant.
On April 27, 1961, Pan American entered into an agent’s contract and a general agent’s contract with Inabnet, the general agent’s contract being a supplement to and generally connected with the agent’s contract. Both agreements were effective as of May 1, 1961. A later general agent’s contract was entered into between the parties under date of March 1, 1964, replacing the earlier general agent’s contract and being also supplementary to the original agent’s contract.
After May, 1961, plaintiff continued as a general agent for defendant, operating a general agency in Monroe until the summer of 1969. On July 31, 1969, a vice president of defendant verbally advised plaintiff that the agency contracts were being terminated by the company effective August 1. The company gave plaintiff written notice of termination of the agency contracts by letter dated August 4, 1969, which letter was received by plaintiff on or about August 5 or 6, 1969. Plaintiff brought suit against defendant alleging that as a result of defendant’s breach of contract, wrongful termination of the agency relationship and the arbitrary and capricious actions of defendant in terminating the relationship, plaintiff suffered damages in the total amount of $2,210,000 consisting of embarrassment and humiliation, loss of business reputation in the community, loss of profits from general agency including overriding, group, term, regular term, conversion, commissions and service fees, loss of retirement benefits and advertising expenses. Defendant answered denying that the contracts were breached or wrongfully terminated and reconvened against plaintiff for the sum of $19,557 allegedly due for advances made to plaintiff under development allowance expense agreements entered into between the parties.
After trial before the jury, special verdicts or interrogatories were submitted to the jury and answered as follows:

"Interrogatories to the Jury

“1. Do you find from all the evidence in this case that Pan-American Insurance Company was justified in terminating its agency relationship *776 with William Inabnet on August 1, 1969?
“Answer:- Yes or No No
“Then only if your answer to the first interrogatory is 'no’, answer the next interrogatory:
“2. Did William Inabnet sustain any damages as a result of Pan-American’s termination?
“Answer: Yes Yes or-No
“Then only if your answer to' the second interrogatory is 'Yes’, answer the next interrogatory:
“3. What is the dollar value of the damages sustained by William Inabnet? “$_750,000_”
The principal errors in the jury verdict and the judgment on which it is based specified by defendant on appeal, can be summarized as follows:
(1) Failing to find that Pan American Life Insurance Company had the unrestricted right to terminate the agency agreements under specific written provisions therefor contained in the contracts.
(2) In finding that defendant wrongfully terminated the agency agreements and in refusing to recognize that the termination was legal, valid and in keeping with the provisions set forth in the written agreements between the parties.
(3) In finding that plaintiff was damaged as a result of his termination by defendant and in failing to find that defendant had the right to terminate the contracts without subjecting itself to any claim for breach of contract.
(4) In finding that plaintiff was damaged to the extent of $750,000'.
(5) In failing to find that plaintiff, if he was, in fact, entitled to any damages at all, was entitled only to such damages as were sustained by him between the date of verbal termination of the agency contracts and the date on which the contracts were terminated by written notice.
(6)In failing to find that defendant was entitled to recover the sum of $19,-557 for amounts advanced by it to plaintiff.
The agency contracts between plaintiff and defendant specifically provide for termination thereof by either party thereto, with or without cause, upon the giving of written notice by one party to the other. The specific wording of this particular clause in the agent’s contract reads as follows :
“ARTICLE VII “TERMINATION
“a) This contract may be terminated under any one of the following conditions:
“1. By either party with or without cause upon giving written notice to the other. Such notice mailed by the Company to the last known address of the Agent shall be deemed to be sufficient notice.”
The specific wording of this particular clause in the general agent’s contract reads as follows :
“TERMINATION
“This supplemental contract may be terminated:
“1. By either party with or without cause upon giving written notice to the other. Such notice mailed by the Company to the last known address of the General Agent shall be deemed to be sufficient notice.”
 The validity of such a provision for termination by either party, with or without cause, has been upheld under Louisiana law, by both state and federal courts. Dorsey v. State Farm Insurance Company, *777 294 F.2d 678 (5th Cir. 1961)Martin-Parry Corp. v. New Orleans Fire Detection Service, 221 La. 677, 60 So.2d 83 (1952); Wright v. Southwestern Life Insurance Company, No. 14562 (U.S.D.Ct., W.D.La., August, 1972). The same result has been reached by state and federal decisions applying the law of other states. Shain v. Washington National Insurance Company, 308 F.2d 611, 96 A.L.R.2d 265 (8th Cir. 1962); Case v. State Farm Mutual Automobile Insurance Company, 294 F.2d 676 (5th Cir. 1961); Raynor v. Burroughs Corporation, 294 F.Supp. 238 (E.D.Va.1968); Buska v. Central Life Assurance Company, 32 Wis.2d 534, 145 N.W.2d 721 (1966). Under an unrestricted reservation of the right to cancel, an agency contract may be canceled at any time without subjecting the party canceling it to any claim for breach of contract. The parties to these agreements, Inabnet and Pan American, contracted between themselves in writing. As between the parties, these written agreements have the effect of law. LSA — Civil Code Article 1901.
It follows then that the finding of the jury that Pan American was not justified in terminating the agency contract with Inabnet is manifestly erroneous as a matter of law. Pan American had a perfect legal right to terminate the contract at any time for any reason or no reason. Defendant offered evidence at the trial relating to its reasons for canceling the agency agreement bearing on its dissatisfaction with plaintiff’s personal and business conduct. Plaintiff offered evidence at the trial to show that he had built the agency up from practically nothing into one of the company’s leading agencies. The evidence showed plaintiff received many awards from the defendant for salesmanship and production; some of his agents were top producers; the agency had steadily increased in production; and during the year in which the contracts were terminated, the agency was having one of its best years. All of this evidence is irrelevant insofar as Pan American’s right to cancel the contracts is concerned and for that reason it is unnecessary to review the evidence in detail.
It also follows that plaintiff is not entitled to recover damages sustained by him resulting from termination of the agency agreements.
Plaintiff contends, however, that regardless of defendant’s right to terminate the agency contracts, defendant breached the contracts when it attempted to cancel the contracts by verbal notice and by its acts in moving in and taking over plaintiff’s agency prior to giving written notice of termination.
The evidence shows that sometime prior to July 31, 1969, the defendant company through its executive officers decided to cancel Inabnet’s contracts. Arrangements were made by the company with the general agent in Alexandria to take over as general agent of the Monroe agency. These plans were not communicated to plaintiff until July 31. On that date, pursuant to arrangements made by telephone, a vice president of the company met with Inabnet in El Dorado, Arkansas, where plaintiff was working in establishing a new agency. The vice president verbally advised plaintiff that his contract was being terminated effective August 1. Plaintiff testified he was not told at that time or at any later time why the contract was being terminated.
On the same date that plaintiff was being told that the contract was terminated, other employees of the defendant company went into plaintiff’s agency office in Monroe and, in effect, took over. The agents and other personnel working in the office were told that plaintiff had “resigned” as general agent. The agents and other employees were told that a new general agent was coming in immediately; were told that their jobs were secure; and were requested to stay with the company. A cocktail party was given for all of the agency personnel within the next day or so at which time they met the new general agent and *778 other officials of the company. A large ad was run in the Monroe newspapers within the next day or so showing a picture of the new general agent and his family. During this time a letter was mailed to all policyholders of the agency encouraging continuance of their business and warning the policyholders not to deal with anyone other than an authorized agent of Pan American. All of this was done at and between the time of the verbal notice of cancellation on July 31, and receipt of the written notice of cancellation on August 5 or 6.
Just as Inabnet was bound by the express written terms of his contract giving the company the right to cancel at any time with or without cause, Pan American was bound by the express written provisions of the contract requiring written notice of termination. Until written notice was given, the contract remained in full force and effect. The actions of the company in taking over plaintiff’s agency; installing a new general agent; advertising publicly; and writing to the policyholders was in clear breach of its implied obligations under the contract so long as it remained in effect. These actions on the part of the company amounted to an active and deliberate breach of their obligations and amounted to legal bad faith. It follows that plaintiff is entitled to any damages he sustained by reason of the bad faith breach of contract by defendant through its actions from July 31 through the date of effective cancellation of the contract.
In this connection, it should be pointed out that although defendant offered evidence tending to support its business judgment in canceling the agency contract, the evidence comes nowhere close to justifying its actions in taking over plaintiff’s agency in the manner it did, on the basis of anticipatory breach or as necessary steps in order to protect the company’s interest, prior to formal cancellation. While the company may, from its own standpoint, have believed it had good business reasons for canceling the agency contract and although the personal verbal advice to plaintiff that he was being terminated and the statement to his personnel that he had resigned may have been done as a courtesy to him, the takeover of his agency during this period was strictly a matter of self-interest on the part of the company.
Plaintiff is entitled to the damages, if any, sustained by him resulting from this breach of contract on the part of defendant. We believe plaintiff did suffer some damage in this regard, but that his damages are relatively nominal.
Plaintiff offered evidence to show that had he continued as Pan American general agent in Monroe until retirement and had his business continued at the same rate it was going at the time of cancellation, he would have earned hundreds of thousands of dollars in commissions and retirement benefits. Plaintiff’s evidence showed that since termination by Pan American he has been unable to establish anything close to a similar agency although he is now serving as general agent for another insurance company. Unquestionably, his income and future earnings and profits have been drastically reduced by reason of the fact that he is no longer the Pan American general agent in Monroe. However, these damages and this loss result from the termination of the agency agreement which the defendant had a right to do and not from the defendant’s actions prior to effectively canceling the agreement by written notice.
The evidence shows that all of the agents working in the general agency at the time of termination and the other personnel remained with Pan American. There is no evidence to show that this situation would have been different if the company had effectively canceled the agreement prior to taking over plaintiff’s office and talking to his personnel. There is no evidence to support a finding that plaintiff would have fared better if one or more of his agents or employees had stayed with him.
*779 Plaintiff’s evidence as to embarrassment, humiliation and damage to business reputation suffered by him consists primarily of his own testimony as to reaction of his friends, customers and policyholders and sales resistance he met in subsequent efforts to sell life insurance. We are of the opinion plaintiff sustained some damage in this respect by reason of the manner in which he was terminated and his agency taken over by the company. Fixing a dollar amount for this type of injury is difficult but we conclude that $5,000 will adequately compensate plaintiff for his loss attributable to the defendant’s breach of contract prior to effective termination of the agency agreement.
It should be noted that although the agency contract was effectively terminated on August 5 or 6, plaintiff received the full emoluments to which he was entitled as if the contract remained in effect through the end of August. It should be further noted that under the express terms of the agreement, plaintiff has and will receive renewal commissions amounting to several thousand dollars.
Turning to defendant’s reconventional demand for amounts advanced under the development allowance expense agreements the record is practically devoid of evidence substantiating an indebtedness in this amount owed by plaintiff to defendant. The reconventional demand was properly rejected.
For the reasons assigned, the judgment of the district court is amended by reducing the amount of the judgment in favor of plaintiff and against defendant from the sum of $750,000 to the sum of $5,000, together with legal interest thereon from date of judicial demand until paid. All costs of this proceeding are assessed to defendant.
Amended, and as amended, affirmed.