2000 SD 139

**FRATERNAL ORDER OF EAGLES # 2421 OF VERMILLION, South Dakota, Plaintiff and Appellee,**

v.

**Paul HASSE, d/b/a Coyote Vending and Lottery Company, Defendant and Appellant.**

**No. 21262.**

Supreme Court of South Dakota.

Considered on Briefs Sept. 18, 2000.

Decided Nov. 8, 2000.

Craig K. Thompson, Vermillion, Attorney for plaintiff and appellee.

James E. McCulloch, Vermillion, Attorney for defendant and appellant.

MILLER, Chief Justice.

[¶ 1.] In this declaratory judgment action, we hold that a video lottery lease was not effectively terminated.

## FACTS

[¶ 2.] The Fraternal Order of Eagles # 2421 (F.O.E.) of Vermillion, South Dakota entered into a written lease with Paul Hasse on September 6, 1989. The lease provided that F.O.E. would lease floor space to Hasse for installation of video lottery machines in return for Hasse's remittance of a specified percentage of the net proceeds earned by the machines. According to the terms of the lease, it would automatically renew every four years unless either party exercised the termination provision contained therein. Under this provision, either party could cancel the lease by providing written notice to the other by certified mail no less than sixty days prior to the end of the current four year term. Neither party exercised the option to terminate in 1993, so the lease, according to its terms, automatically renewed for another four years beginning September 6, 1993.

[¶ 3.] On June 22, 1994, ten months after the lease automatically renewed, this Court declared video lottery unconstitutional. *Poppen v. Walker,* 520 N.W.2d 238 (S.D.1994). Hasse's video lottery machines at the F.O.E. building were turned off. The machines were again activated on November 22, 1994 subsequent to a general election where South Dakota voters amended the South Dakota State Constitution by permitting video lottery. The constitutional amendment authorizing video lottery contained a specific savings clause ratifying and approving leases of the type between F.O.E. and Hasse.[1] However, on

---

1. The savings clause in South Dakota Constitution article III, section 25 states:

SDCL 42–7A, and its amendments, regulations, and related laws, and all acts and

November 16, 1994 under the mistaken belief that pursuant to *Poppen* the 1989 lease was null and void F.O.E. sent Hasse a letter requesting that he remove his machines within forty-eight hours of receipt of its letter. This letter precipitated a meeting between the parties to discuss modifying the original lease. Out of this meeting, F.O.E.'s attorney produced a Memorandum Agreement purporting to modify the original lease. Neither party ever signed the agreement. Hasse's machines continued to operate at the F.O.E. and he continued to make payments according to the terms in the 1989 lease.

[¶ 4.] On August 8, 1997, F.O.E. sent Hasse another letter purporting to terminate the lease pursuant to the unsigned Memorandum Agreement. Again Hasse met with F.O.E. on September 9, 1997 to discuss the lease. According to notes from the meeting, the stated purpose was to maximize profits for F.O.E. The parties discussed ways to accomplish this goal and proceeded forward. Hasse continued to operate the machines in F.O.E.'s building and pay it the percentage of net proceeds provided for under the 1989 lease.

[¶ 5.] On February 19, 1999, F.O.E. sent Hasse a letter asking him to attend a meeting to discuss the relationship between the parties. Hasse met with F.O.E., but he refused to negotiate. F.O.E then sent Hasse a certified letter on April 5, 1999 stating its desire to end any further lease relationship with him. The letter stated F.O.E.'s position that it was unsure whether the parties were operating under the 1989 lease or the Memorandum Agreement's purported modification of the 1989 lease. The letter reiterated F.O.E.'s mistaken belief that this Court's *Poppen* decision invalidated the 1989 lease. F.O.E. filed a notice of termination in circuit court on May 20, 1999 and sent Hasse a certified letter of such notice. The letter stated F.O.E.'s desire to terminate any

contracts relying for authority upon such laws and regulations, beginning July 1,

and all contracts or leases existing between the parties.

[¶ 6.] Hasse's video lottery machines have remained in the F.O.E. building at all pertinent times. Except for the brief period between our *Poppen* decision and the constitutional amendment, Hasse has continued to operate the machines and pay F.O.E. according to the terms set forth in the 1989 lease.

[¶ 7.] F.O.E. commenced this declaratory judgment action in circuit court asking the court to determine whether the 1989 lease, the Memorandum Agreement or some other arrangement governed the relationship between the parties. The complaint also asked the court to determine the effective termination date of the parties' contractual relationship. The circuit court held that the 1989 lease governed the parties' relationship and that the November 16, 1994 letter effectively terminated the lease as of September 6, 1997. Hasse appeals. We reverse.

## STANDARD OF REVIEW

[¶ 8.] This Court reviews declaratory judgments as we do any other order, judgment, or decree. SDCL 21–24–13; *Mid–Century Ins. Co. v. Lyon*, 1997 SD 50, ¶ 4, 562 N.W.2d 888, 890. We give no deference to a trial court's conclusions of law under the de novo standard of review. *Wood v. South Dakota Cement Plant*, 1999 SD 8, ¶ 9, 588 N.W.2d 227, 229 (citing *Jasper v. Smith*, 540 N.W.2d 399, 401 (S.D. 1995)).

## DECISION

[¶ 9.] The circuit court decided that the November 16, 1994 letter effectively terminated the video lottery lease preventing a four year renewal on September 6, 1997. For reasons set forth below, we disagree.

[¶ 10.] The circuit court arrived at its conclusion by adopting a holding from a

1987, to the effective date of this amendment, are ratified and approved.

738

1962 federal case originating out of Iowa. There, the United States Eighth Circuit Court of Appeals adopted what F.O.E. terms the "erroneous date doctrine." *Shain v. Washington Nat'l Ins. Co.,* 308 F.2d 611, 614 (8th Cir.1962). The court therein stated:

> the general rule that where a contract, whether it be one for employment or for insurance or of a different kind, requires written notice of cancellation upon a stated time, a notice failing to meet the time requirement, but otherwise appropriate, is nonetheless effective upon the lapse of the time required by the contract.

*Id.* Based upon this language, the trial court concluded as a matter of law that F.O.E.'s November 16, 1994 letter to Hasse effectively terminated the video lottery lease in September 1997.

[¶ 11.] We note at the outset that *Shain* is not binding on issues of South Dakota state law. S.D. Const. art. V, § 2; *State v. Fountain,* 534 N.W.2d 859, 864 (S.D.1995); *State v. Janis,* 317 N.W.2d 133, 137 (S.D.1982). In fact, the *Shain* court was itself simply predicting what the Iowa Supreme Court would do were it presented with the same question. *Shain,* 308 F.2d at 617.

[¶ 12.] In reality, this is a simple contract case. F.O.E.'s November 16, 1994 letter did not act as a notice of termination under the lease. On the contrary, it simply stated its erroneous belief that the lease was null and void and requested Hasse to remove his machines within forty-eight hours. As stated above, F.O.E.'s belief was erroneous because specific language in the amendment to the South Dakota Constitution permitting video lottery contained a savings clause which ratified and approved such leases. S.D. Const. art. III, § 25. F.O.E.'s letter informed Hasse that it would be seeking new video lottery services to be operative upon the effective date of the amendment permitting video lottery. We cannot understand why F.O.E. erroneously believed the 1989 lease

was null and void in light of the specific language in the savings clause which ratified and approved the type of lease F.O.E. had with Hasse. The November 16, 1994 letter cannot be said to have acted as a notice of termination under a lease it erroneously declared null and void.

[¶ 13.] The events following the November 16, 1994 letter add further support that it was not in fact a notice of termination. After F.O.E. sent the letter, the date set for removal of Hasse's machines came and went while the parties continued their discussions. Furthermore, F.O.E. attempted but failed to negotiate a modification of the lease as pertains to the length and automatic renewal provisions subsequent to the November 16, 1994 letter. After the failed attempt at modifying the 1989 lease, Hasse continued to operate his video lottery machines at F.O.E., and paid according to the 1989 lease. These payments were accepted by F.O.E. without protest.

[¶ 14.] Hasse did not hear from F.O.E. again until August 8, 1997 when F.O.E. sent Hasse a notice of termination. This notice fell far short of the sixty day notice F.O.E. agreed to under the lease and is insufficient as a matter of law to terminate the 1989 lease. *Associated Press v. Heart of Black Hills Stations, Inc.,* 325 N.W.2d 49, 52–53 (S.D.1982) (citing *Standard Pub. Corp. v. Mitchell Pub. Co.,* 59 S.D. 552, 554, 241 N.W. 520, 521 (1932)). It would be fundamentally unfair to allow F.O.E. to claim in hindsight that its November 16, 1994 letter erroneously declaring the lease null and void was in fact a proper notice of termination under that lease.

[¶ 15.] F.O.E. argues that Hasse took advantage of F.O.E.'s managerial confusion caused by the election of new trustees every three years. We reject this argument. According to the record, F.O.E. trustees are elected to manage F.O.E.'s business matters. The 1989 video lottery lease was certainly such a business matter. Any confusion F.O.E. claims existed was due in large part to the trustees' failure to

be clear and consistent in business dealings with Hasse.

[¶ 16.] Had F.O.E. wanted to terminate the lease effective September 1997, it simply needed to provide Hasse with proper notice of termination no less than sixty days prior to the end of the current four year term. It failed to do this. The November 16, 1994 letter did not terminate the lease, and the August 8, 1997 notice of termination was too late.[2]

[¶ 17.] Reversed.

[¶ 18.] SABERS, AMUNDSON, KONENKAMP, and GILBERTSON, Justices, concur.

---

2. We note in the record that F.O.E. did ultimately provide Hasse with an effective notice of termination. Accordingly, the lease will terminate September 5, 2001 and will not renew itself on September 6, 2001, absent contrary agreement by the parties.